*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0583**

State of Minnesota,
Respondent,

vs.

Mario Gonzalez,
Appellant.

**Filed April 13, 2015
Affirmed in part, reversed in part, and remanded
Reyes, Judge**

Lyon County District Court
File No. 42CR13757

Lori Swanson, Minnesota Attorney General, St. Paul, Minnesota; and

Richard Maes, Lyon County Attorney, Marshall, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Cleary, Presiding Chief Judge; Bjorkman, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

Appellant Mario Gonzalez argues that the district court plainly erred by admitting irrelevant and prejudicial evidence and that this error affected the outcome of the trial. Appellant also argues that the district court erred by imposing three sentences for three

offenses arising from a single behavioral incident. We conclude that the admission of irrelevant evidence was error that did not affect appellant's substantial rights. But we also conclude that appellant's three offenses arose from a single behavioral incident. Therefore, we affirm in part, reverse in part, and remand to vacate two of the three sentences.

## FACTS

On June 30, 2013, Officer Bryan Arzdorf was on patrol in Marshall when he observed a Cadillac driving with no working tail lights. Officer Arzdorf got behind the vehicle and turned on his squad lights to initiate a traffic stop. The vehicle traveled a short distance before it pulled over to the side of the road. Officer Arzdorf exited his squad and started to approach the vehicle. Officer Arzdorf "immediately recognized that the front seat passenger was [N.H.]" and "[a]s [he] got closer to the vehicle, he observed that the driver was [appellant]." When he reached the rear bumper of the Cadillac, the vehicle accelerated and drove away.

Officer Arzdorf pursued the Cadillac for a short time through a residential neighborhood before he lost sight of it. Officer Arzdorf testified that he backed off the speed of his pursuit for safety reasons. He estimated that the Cadillac was traveling between 50 and 60 miles per hour. Officer Arzdorf obtained the license plate number of the vehicle and determined that the Cadillac was registered to J.L., while the tabs were registered to J.S. for a different vehicle. He radioed other officers to continue the search for the vehicle. Officer Arzdorf also spoke to J.L., who indicated that he had sold the Cadillac to appellant about a year earlier.

2

The Cadillac was located by a Marshall police officer approximately one hour later. The unoccupied vehicle was parked on the street. Officer Arzdorf identified the Cadillac as the same one he had stopped. The officers conducted a search of the vehicle prior to it being towed and discovered numerous items, including an iPad that belonged to C.G.; receipts and documents that bore appellant's name; a large black bag containing a .45 caliber magazine with five rounds in it, and men's clothing that the officers believed were in appellant's approximate size; and a smaller blue bag containing a plastic baggie with trace amounts of marijuana, rolling papers, and "a metal one-hitter with black residue that smelled like marijuana."

At trial, Officer Arzdorf provided testimony that he was certain that the driver of the Cadillac was appellant. Officer Arzdorf testified that he was able to identify the driver because he had his flashlight on the driver's face for about five to ten seconds, from a distance of about six feet. However, Officer Arzdorf testified that he could not be sure of the passenger's identity and that it was possible it was C.G., and not N.H.

Appellant testified that he was not in Marshall on June 30 and that he had not been driving the Cadillac that day. He also testified that he purchased the Cadillac from J.L. in the summer of 2012 for buyer J.S., explaining that he conducted business buying, fixing, and reselling cars. Because he did not have the opportunity to fix the Cadillac right away, it was parked all through the winter. Appellant testified that his mechanic had possession of the vehicle on June 30, 2013. Appellant acknowledged that he did not have a driver's license at that time because it had been revoked.

3

Appellant admitted that some of the items discovered in the Cadillac belonged to him, including the small blue bag. He had no permanent residence at that time, which was why his personal items were kept in various places. Appellant stated that he "lost track" of the small blue bag at some point and that he did not know how it ended up in the vehicle. He testified that the larger bag containing the men's clothing and the .45 caliber magazine did not belong to him.

Appellant was charged with fleeing a peace officer, reckless driving, driving after revocation, and possession of drug paraphernalia. The jury found appellant guilty on all four counts. Appellant was sentenced to 17 months in prison with execution stayed for three years on the felony fleeing conviction; 30 days in jail for the misdemeanor reckless-driving conviction; 30 days in jail for the misdemeanor driving-after-revocation conviction; and a $50 fine on the petty misdemeanor drug-paraphernalia conviction. This appeal follows.

# D E C I S I O N

Appellant argues that the district court plainly erred when it admitted evidence of the .45 caliber magazine. When a defendant fails to object to the admission of evidence, we review for plain error. *See* Minn. R. Crim. P. 31.02; *State v. Strommen*, 648 N.W.2d 681, 686 (Minn. 2002). Under the plain-error test, appellant must show (1) error, (2) that was plain, and (3) that affected appellant's "substantial rights." *Strommen*, 648 N.W.2d at 686. If all three prongs are satisfied, then a reviewing court must decide whether to address the error "to ensure the fairness and the integrity of the judicial proceedings." *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). We agree with appellant that it was

4

error to admit the evidence but conclude that it did not prejudice appellant's substantial rights.

## I.    Error

In general, all relevant evidence is admissible.  Minn. R. Evid. 402.  Relevant evidence is evidence that has any tendency to make the existence of any material fact more or less probable than it would be without the evidence.  Minn. R. Evid. 401.  Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice.  Minn. R. Evid. 403.

Physical evidence is admissible if it "tends to connect the defendant to the crime." *State v. Olson*, 436 N.W.2d 817, 820 (Minn. App. 1989), *review denied* (Minn. Apr. 26, 1989).  "The lack of an absolute connection between the object introduced into evidence and the alleged crime does not affect the admissibility of the challenged evidence, but only its weight." *Id.*  Appellant was charged with fleeing a peace officer, reckless driving, driving after revocation, and possession of drug paraphernalia; the use of a firearm was not at issue in this case.  The requisite connection between the ammunition found in the vehicle and the crimes charged does not exist.  Thus, evidence that the driver of the vehicle was in possession of ammunition is not probative as to any element of the offenses with which appellant was charged. *See* Minn. R. Evid. 401.

Appellant argues that the evidence was also inadmissible under Minn. R. Evid. 404(b) because the prosecutor used the evidence to show that appellant had bad moral character and "must have acted in conformity with that character."  We agree.  Generally, evidence of prior crimes or bad acts is not admissible as character evidence to show that

the person acted in conformity with that character. Minn. R. Evid. 404(b); *see generally State v. Spreigl,* 272 Minn. 488, 139 N.W.2d 167 (1965). Such prior-bad-acts evidence is often referred to as *Spreigl* evidence. While it is undisputed that the evidence here is not admissible under rule 404(b), the evidence may be admissible for other limited purposes, including proof of "motive, intent, knowledge, identity, absence of mistake or accident, or a common scheme or plan." *See State v. Ness,* 707 N.W.2d 676, 685 (Minn. 2006).

Respondent indicated that the challenged testimony was offered to provide "a possible explanation for [appellant's] actions in this case."[1] To establish this connection, respondent relies on an improper inference that appellant was doing something inherently wrong by possessing the ammunition and that therefore he had a reason to flee from the officer. In his closing argument, the prosecutor urged the jury to find the evidence probative as to *why* appellant had a reason to flee:

> As Officer Arzdorf told you . . . [appellant] had to get out of there. He didn't want to be arrested on the warrant. . . . But it might not [have] been the warrant, I don't really know and I don't know that that's really relevant in your decision. I mean [appellant] has a history for drugs. There's some big gun ammo in that bag. I don't know. But what we do know is he took off.

But there was no evidence presented to the jury that appellant could not possess ammunition or that he was concerned that possession of the ammunition would get him in trouble. The introduction of this evidence was error because it attempted to persuade by "illegitimate means" that appellant was doing something wrong or had committed a bad act. *See State v. Schulz,* 691 N.W.2d 474, 478 (Minn. 2005) ("[U]nfair prejudice is

---

[1] Respondent elected to not file a brief on appeal.

evidence that persuades by illegitimate means, giving one party an unfair advantage."). This is the type of character-based inference that is expressly prohibited by Minn. R. Evid. 404(b).

### A. Substantial rights

An error is prejudicial where there is a reasonable likelihood that the error had a significant effect on the verdict. *Griller*, 583 N.W.2d at 741. Although the admission of this evidence was error, it was not prejudicial to appellant's substantial rights.[2] The central issue in appellant's case was whether appellant was the person driving the Cadillac at the time of the offense. Evidence of appellant's identity as the driver of the vehicle and of appellant's guilt with respect to the offenses was strong: (1) testimony from J.L. established that he sold the Cadillac to appellant; (2) appellant admitted that one of the bags found in the vehicle belonged to him—particularly the one with drug paraphernalia; (3) there were documents and receipts found in the vehicle which bore appellant's name; (4) Officer Arzdorf provided consistent testimony that he identified the driver as appellant; and (5) appellant acknowledged his license had been revoked. Because there is substantial evidence of appellant's guilt, evidence of the .45 caliber magazine did not affect appellant's substantial rights.

---

[2] Because we determine that the error did not affect appellant's substantial rights, we need not reach the issue of whether the error was plain. *See Montanaro v. State*, 802 N.W.2d 726, 732 (Minn. 2011) ("[I]f we find that any one of the requirements [under the plain-error test] is not satisfied, we need not address any of the others.").

## II.     Single Behavioral Incident

Appellant next argues that the district court erred by imposing three separate sentences for three offenses that arose from a single behavioral incident.[3]   When a challenge to a sentence is based on a legal issue, this court's review is de novo.  *State v. DeRosier*, 719 N.W.2d 900, 903 (Minn. 2006).  We "determine whether the sentence is inconsistent with statutory requirements, unreasonable, inappropriate, excessive, unjustifiably disparate, or not warranted by the findings of fact issued by the district court."  Minn. Stat. § 244.11, subd. 2(b) (2012).  Although appellant did not object, an offender "does not waive relief from multiple sentences or convictions arising from the same behavioral incident by failing to raise the issues at the time of sentencing."  *State v. Clark*, 486 N.W.2d 166, 170 (Minn. App. 1992).

If a person's conduct constitutes more than one offense under Minnesota law, the person generally "may be punished for only one of the offenses."  Minn. Stat. § 609.035, subd. 1 (2012); *see State v. Johnson,* 653 N.W.2d 646, 651 (Minn. App. 2002).  The Minnesota Supreme Court has "interpreted section 609.035 to bar multiple sentences for crimes that arise from a single behavioral incident."  *State v. Bauer*, 792 N.W.2d 825, 827 (Minn. 2011).  "The presence or absence of a single behavioral incident depends on the facts and circumstances of each case."  *State v. Wurst*, 350 N.W.2d 482, 483 (Minn. App. 1984).  The Minnesota Supreme Court uses different tests to determine whether

---

[3] Appellant does not challenge the district court's sentencing with respect to the fleeing offense.  Pursuant to Minn. Stat. § 609.035, subd. 5 (2012), a fleeing conviction is not a bar to punishment for any other crime committed as part of the same conduct.  Appellant only challenges the remaining three separate sentences for (1) reckless driving; (2) driving after revocation; and (3) possession of drug paraphernalia.

crimes arise from a single behavioral incident, and "[w]hich test applies depends on whether the crime at issue contains an intent element." *Bauer*, 792 N.W.2d at 827-28.

Possession of drug paraphernalia is an intentional crime. *See* Minn. Stat. § 152.092 (2012) (requiring that the actor knowingly or intentionally use or possess drug paraphernalia). Reckless driving and driving after revocation are unintentional offenses. *See State v. Reiland*, 274 Minn. 121, 124–25, 142 N.W.2d 635, 638 (1966) ("As is true of . . . traffic offenses, intent is not an essential element of the crime."). The test to apply when the offenses include both intentional and unintentional crimes is "whether the offenses arose out of a continuing and uninterrupted course of conduct, manifesting an indivisible state of mind or coincident errors of judgment." *State v. Butcher*, 563 N.W.2d 776, 784 (Minn. App. 1997) (quotation omitted), *review denied* (Minn. Aug. 5, 1997).

"The state has the burden to establish by a preponderance of the evidence that the conduct underlying the offenses did not occur as part of a single behavioral incident." *State v. Williams*, 608 N.W.2d 837, 841-42 (Minn. 2000). Until the state meets its burden, it should be assumed that the offenses were part of a single behavioral incident. *Johnson*, 653 N.W.2d at 652. Despite its clear burden, respondent did not file a brief. Because respondent has failed to meet its burden, we presume that the offenses are all part of a single behavioral incident. *See id.* Accordingly, we reverse and remand to the district court to vacate two of the sentences, resulting in one sentence for fleeing and one sentence for the most serious remaining offense.

**Affirmed in part, reversed in part, and remanded.**

9